2021 IL App (2d) 180736-U
No. 2-18-0736
Order filed February 8, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-270 |
| KYRAN M. WILLIAMS, | ) ) ) | Honorable James M. Hauser, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for threatening a public official is reversed; defendant's statements threatened harm to the officer but did not specify the type of harm or how defendant would inflict it; therefore, the threats did not "contain specific facts indicative of a unique threat to the person, family or property of the officer" as required by the statute defining the offense.

¶ 2    Following a bench trial in the circuit court of Stephenson County, defendant, Kyran M. Williams, was found guilty of threatening a public official (720 ILCS 5/12-9(a)(1)(i), (a)(2) (West 2016)).  Defendant argues on appeal that his conviction must be reversed because the evidence did

not establish that he made a threat containing specific facts indictive of a unique threat. We reverse.

¶ 3                    I. BACKGROUND

¶ 4    At trial, Freeport police officer Richard McElmeel testified that he was a member of the Freeport Police Department's gang unit. On September 21, 2017, he and Officer Robyn Stovall were engaged in "stationary patrol" at the corner of Pershing and Chicago. After hearing a report of possible shots fired, McElmeel observed a vehicle traveling east on Pershing. The vehicle stopped in the middle of the roadway in front of a residence at 102 East Fuller Street. Jayvion Avery emerged from the front passenger seat. The officers instructed him several times to step back into the vehicle, but he did not comply. Defendant and Deonte Hobbs approached the officers from the residence and started yelling at them. McElmeel was familiar with defendant, who was a member of the 103 Street gang and had been the victim of a shooting.

¶ 5    The officers instructed defendant and Hobbs to walk to the sidewalk. At that point, defendant yelled, " 'I'm going to fuck you up man,' " at McElmeel while approaching him at a fast pace. McElmeel walked toward defendant and told him he was under arrest. Defendant started to walk away. While McElmeel was trying to place defendant under arrest, defendant violently ripped his right wrist from McElmeel's grasp and threw some object toward Hobbs. McElmeel then pushed defendant into a parked car in order "to gain leverage on him." After a short struggle, McElmeel was able to subdue defendant.

¶ 6    Officer Stovall tried to pick up the object that defendant had thrown, which turned out to be a cell phone. Hobbs also tried to retrieve the cell phone, and he and Stovall struggled over it. She advised Hobbs that he was under arrest. She struggled with Hobbs in trying to arrest him. McElmeel requested assistance and officers Laurent, Earnest, and Hilby arrived at the scene. Hilby

had an auxiliary officer with her. After defendant had been placed in handcuffs, Hilby took custody of him and took him to her vehicle. Hilby asked McElmeel to help her place two pairs of handcuffs on defendant. When McElmeel walked over to assist Hilby, defendant started yelling profanities and told McElmeel " 'mother fucker catch you off duty.' " McElmeel interpreted that to mean "if the defendant saw [McElmeel] off duty, not working in a police officer capacity, that he would conduct bodily harm on [McElmeel]."

¶ 7    McElmeel was wearing a body camera that recorded part of his encounter with defendant, including both of defendant's statements to McElmeel. (The camera was accidentally turned off when McElmeel pushed defendant against a vehicle, but McElmeel turned it back on.) The recording was admitted into evidence and was played in court. McElmeel testified that he took defendant's threats seriously and feared for his safety at times during the encounter. The State also presented Stovall's testimony. Her account of the incident was, in all material respects, identical to McElmeel's.[1]

¶ 8    In its ruling the trial court explained that it relied on dictionary definitions of the terms "unique" and "generalized." The trial court stated that, according to its dictionary, " 'unique' " meant "Single, sole, being without a like or equal." " 'Generalized' " meant "[m]ade general." "General" meant "[i]nvolving or applicable to the whole; involving, relating to or applicable to every member of a class, kind or group." The trial court noted that defendant "specifically said to McElmeel, 'I'm going to fuck you up man.' " The trial court added that the threat was "directed directly to [McElmeel]" The court also noted defendant's threat to catch McElmeel off duty. The

_____

[1] Avery testified for the defense, but his testimony is not germane to the issue on appeal.

court concluded, "I believe that under the statute, that is a unique threat containing specific facts to McElmeel and is not a generalized threat of harm."

¶ 9                                  II. ANALYSIS

¶ 10    At issue here is whether the evidence was sufficient to sustain defendant's conviction. We review the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), as adopted by *People v. Collins*, 106 Ill. 2d 237 (1985): " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson*, 443 U.S. at 319).

¶ 11    Sections 12-9(a) and (a-5)of the Criminal Code of 2012 (720 ILCS 5/12-9(a), (a-5) (West 2016)) provide, in pertinent part, as follows:

> "(a) A person commits threatening a public official or human service provider when:
>
> > (1) that person knowingly delivers or conveys, directly or indirectly, to a public official or human service provider by any means a communication:
> >
> > > (i) containing a threat that would place the public official or human service provider or a member of his or her immediate family in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement, or restraint; or
> > >
> > > (ii) containing a threat that would place the public official or human service provider or a member of his or her immediate family in reasonable apprehension that damage will occur to property in the custody, care, or control of the public official or his or her immediate family; and

(2) the threat was conveyed because of the performance or nonperformance of some public duty or duty as a human service provider, because of hostility of the person making the threat toward the status or position of the public official or the human service provider, or because of any other factor related to the official's public existence.

(a-5) *For purposes of a threat to a sworn law enforcement officer, the threat must contain specific facts indicative of a unique threat to the person, family or property of the officer and not a generalized threat of harm.*" (Emphasis added.)

The sole question here is whether the threats against Officer McElmeel met the requirements of subsection (a-5).

¶ 12 Defendant argues that his threats were not specific or unique and thus his conviction cannot stand. We agree. Defendant's threat to "fuck [McElmeel] up," was in no way unique. To the contrary, the threat was as general as the language of the statute itself. The threat could embrace a wide variety of types of harm from a beating with fists to the use of any of various weapons, such as firearms, knives, or blunt instruments. The threat contained no specific facts indicative of a unique threat. The threat—"catch you off duty"—was slightly more specific; it indicated that defendant would inflict harm on McElmeel at a time when he might be far more vulnerable to an attack than while on duty. Again, however, defendant did not indicate the sort of harm he would inflict or how he would inflict it. Specifying that the threat would be carried out when McElmeel was off duty did not make the threat itself "unique."

¶ 13 In arguing that the threats were within the scope of section 12-9(a-5), the State contends that they must be viewed in light of the surrounding circumstances, namely, that McElmeel was a member of police force's gang unit, that he was familiar with defendant, who was a gang member,

and that the threat took place under circumstances were McElmeel and his fellow officer were outnumbered. These factors are germane to the issue of whether the threats put McElmeel in reasonable apprehension of harm. However, they have no bearing on the character of the threats themselves, both of which were generalized threats of harm. The State also stresses that the threats were against a "specific officer." That the target of the threats was unique does not make the threats themselves unique, however.

¶ 14 The State relies, in part, on *People v. Warrington*, 2014 IL App (3d) 110772, in which the evidence was found sufficient to sustain a conviction of threatening a public official. In that case, the threat contained a specific fact: the defendant stated that he would " 'head butt' " a police officer. *Id.* ¶¶ 9, 35. Here, in contrast, there was merely a general threat to cause harm. Accordingly, *Warrington* is inapposite.

¶ 15                                  III. CONCLUSION

¶ 16 For the foregoing reasons, the judgment of the circuit court of Stephenson County is reversed.

¶ 17 Reversed.